COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


MARY ANNE ROWE

v.   Record No.   0843-96-2

CHARLES S. ROWE                              OPINION BY
                                   CHIEF JUDGE NORMAN K. MOON
CHARLES S. ROWE                         FEBRUARY 4, 1997

v.   Record No.   0845-96-2

MARY ANNE ROWE


            FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                    Richard H.C. Taylor, Judge

              Donald K. Butler (Ann Brakke Campfield;
              Morano, Colan & Butler, on briefs), for
              Mary Anne Rowe.

              Carl F. Bowmer (Christian & Barton, on
              briefs), for Charles S. Rowe.


        Charles S. Rowe ("husband") and Mary Anne Rowe ("wife") each

appeal the circuit court's order affirming the commissioner in

chancery's equitable distribution and spousal support award.

Husband contends (1) the trial court erred by classifying the

entire increase in value of husband's newspaper stock as marital

property; (2) the $14,000,000 in salary and stocks received by

husband as compensation from the paper, which was more than fair

compensation for husband's efforts, precludes classification of

the stock appreciation as a marital asset; (3) the trial court

erred in treating all but $41,000 of the parties' marital

residence as marital property; (4) the trial court erred in

awarding wife $10,000 per month in spousal support without considering the division of marital property as a factor in making the support award.

We hold that: (1) the trial court erred in classifying the entire increase in the value of husband's stock as marital property because fifty percent or more of the increase was attributable to the efforts of husband's brother and/or passive economic factors; (2) compensation by the paper, whether inadequate or excessive, is but a factor in determining the amount of marital wealth attributable to marital effort; and (3) the trial court erred in treating only $41,000 of the Ingleside Drive home proceeds invested in the parties' marital abode as gifted property. Because the trial court must reconsider classification of the increase in the value of husband's stock and distribution of the $82,000 proceeds of the Ingleside Drive home, the spousal support award must also be reconsidered.

Wife contends in her appeal that: (1) the trial court erred by accepting husband's valuation of his newspaper stock; (2) the trial court erred in failing to order a distribution of husband's retirement benefits consistent with the commissioner's finding that wife was entitled to one-half of the marital share of the retirement benefits; (3) the trial court erred in giving husband credit for post-separation contributions to various marital accounts while not requiring husband to account for post-separation withdrawals from the accounts; and (4) the trial court erred by valuing wife's marital accounts without deduction

for her litigation expenses.

We find that: (1) the court did not err in evaluating the newspaper stock; (2) the court properly refused to award wife one-half of husband's retirement benefits and/or be allowed to name an alternate beneficiary; (3) the court erred in classifying all of husband's post-separation contributions as marital but did not err in refusing wife's proffer concerning husband's separate contributions as wife failed to timely offer supplemental evidence; and (4) the trial court correctly deducted wife's litigation expenses in valuing her accounts because she failed to timely present evidence concerning her litigation expenses.

Husband and wife married on May 1, 1970.  A no-fault final decree of divorce was entered on December 1, 1993.  On March 15, 1996, the circuit court entered its equitable distribution and spousal support decree, confirming the recommendations of the commissioner in chancery.

The vast majority of the parties' assets was generated by virtue of husband's position as a principal stockholder, coeditor, and copublisher of the Free Lance-Star, a family-owned newspaper in Fredericksburg, Virginia.  Husband and his brother became coeditors and copublishers of the Free Lance-Star upon their father's death in 1949.  They divided the duties of the paper.  As coeditor, husband was responsible for the news-editorial side of the paper while husband's brother served as business manager, overseeing all other aspects of the operation, including advertising, production, circulation,

- 3 -

distribution, accounting, as well as operation of the paper's radio station. The paper profited substantially under their control and expanded as the Fredericksburg area experienced rapid population growth. The paper's plant, under the supervision of husband's brother, was expanded in 1965, 1980 and in 1990. Husband's expert calculated the paper's stock increased in value from $500 per share in 1970 to $9,500 per share in 1991.

In addition to running the paper, both brothers were heavily involved in outside activities. Husband was involved in state and national level newspaper organizations. He served as president of the Associated Press Managing Editors Association in 1969 and was elected to the Board of Directors of the American Society of Newspaper Editors. He was also elected to the Associated Press Board in 1976 and served as director until 1985. Wife accompanied him to all major board meetings and conventions and was described as "an integral part of the life of the board." As a result of husband's heavy involvement with these and other newspaper organizations, a managing editor was hired in 1975. The managing editor assumed responsibility for the day-to-day news responsibilities at the paper, leaving husband free to devote additional time to his national newspaper activities. No evidence showed that the stock increased in value due to these activities by husband.

During the course of the parties' marriage, husband received $14,000,000 in salary and dividends. These funds were used to support the parties and their children from prior marriages. At

the time of their marriage, the parties moved into husband's home on Ingleside Drive. Four years later, they acquired a new home at 501 Hanover Street in Fredericksburg. Husband invested the $82,000 proceeds from the sale of his Ingleside home in the purchase and/or refurbishing of the Hanover residence, which was conveyed to the parties by joint title. In the ensuing years, husband spent an additional $250,000 to $300,000 for improvements and maintenance of the Hanover Street home. Wife oversaw refurbishing and decoration of the home and subsequently oversaw a major addition to the home. At the time of the hearing, the net value of the home was calculated at $512,992. The parties also acquired, with funds from husband's salary and dividends, a home on John's Island, Florida.

Husband left the marital home in November, 1991. Wife subsequently learned that husband had been having an affair during the time leading up to the separation and had engaged in another affair during the course of the marriage. Husband filed for divorce on February 18, 1993, on the ground that the parties had been living separate and apart for more than one year. Over the wife's objection, a decree of divorce was entered on December 1, 1993. Issues of spousal support and equitable distribution were referred to a commissioner in chancery and following extensive discovery, a hearing was conducted by the commissioner in June, 1994. The commissioner's report and recommendation was filed August 14, 1995. The final decree of the trial court was entered on March 15, 1996.

During the interim between the parties' separation and entry of the final decree, husband paid many of wife's expenses directly, but did not pay wife's legal expenses. Consequently, wife paid her litigation expenses with funds withdrawn from her marital accounts. Husband also continued to receive his salary and stock dividends during this time and continued to make deposits, withdrawals and transfers to and from the marital accounts.

The trial court made an equitable distribution award to wife of $4,204,530 and a monthly spousal support award of $10,000.

<u>HUSBAND'S ASSIGNMENTS OF ERROR</u>

<u>Increase in Value of Stock</u>

Husband argued that the trial court erred in classifying the entire increase in the husband's newspaper stock as marital property. He asserted that his brother was more responsible for the increase in value of the stock and that the marital portion should have been considerably reduced in light of the fact that from 1970 to 1991, the value of the stock increased dramatically as a result of passive, external factors.

Code § 20-107.3(A)(3)(a) provides that "[i]n the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases . . . ." If husband proved that passive factors, such as the rapid population growth in the Fredericksburg area and low inflation rates accounted for a

- 6 -

portion of the increase in the value of his stock, such increase cannot be properly classified as marital property. Similarly, we have concluded that where third parties contribute to the increase in value of separate property, the marital portion is to be reduced proportionately. Decker v. Decker, 17 Va. App. 12, 435 S.E.2d 407 (1993).

Here, husband produced evidence that from 1971 to 1991 the population in the Fredericksburg area increased from 77,425 to 180,500; the circulation of the newspaper grew from 16,490 to 41,161; and gross income increased from $1,175,539 to $14,890,035. Husband's expert, Mr. Lee Dirks, who has participated in sixty-five sales of privately owned newspapers, testified that the most important factor in the increase in the value of the stock was the dramatic increase in the number of households in the Fredericksburg area over a twenty-one year period. Wife's experts also agreed that the dramatic population growth in the market area was one of the most important factors in the increase in the paper's value. In addition, husband's experts testified that slow inflation contributed to the increase in the paper's value.

Husband also produced evidence that his brother was more responsible for the increase in value of the paper than husband. During husband's marriage, his newspaper duties decreased, most notably after the managing editor was hired in 1975, while husband's brother's duties increased substantially from 1970 to 1991. Husband's brother was solely responsible for the three

expansions of the newspaper plant and was in charge of every other activity and function of the paper, with the exception of the news department. Wife indicated at trial that husband's brother was at least equally responsible for the increase in the value of the paper. In addition, wife and husband spent considerable time away from Fredericksburg, engaged in "national newspaper activities," which consumed a significant portion of husband's time and detracted from his involvement with the Free Lance-Star. The evidence also proved that a managing editor was hired because of husband's national newspaper activities.

Based on this evidence, we hold that the trial court erred in finding that the entire increase in the value of husband's Free Lance-Star stock was due to his personal efforts. The increase classifiable as marital should reflect only that attributable to husband's personal efforts and not those of husband's brother or passive factors, such as population growth and minimal inflation.

Compensation as Fair Return on Increase in Separate Property

Husband also argued at trial that assuming, arguendo, that his personal efforts were entirely responsible for the increase in the value of the Free Lance-Star stock, the $14,000,000 he received in salary and stock dividends constituted more than adequate return to the marital estate for his efforts and consequently classification of the entire increase as marital should not be permitted as this would constitute double recovery for the marital estate. While we have not addressed this

argument in the context of the modern statutory scheme, we concluded in Huger v. Huger, a divorce case filed under the unitary property scheme, that the evidence indicated that the husband's separate property stock was not transmuted into marital property as the parties' efforts which enhanced the stock's value had been fully compensated for by the corporation. Consequently, we held the stock was not transmuted into marital property. 16 Va. App. 785, 789, 433 S.E.2d 255, 258 (1993).

Here, as discussed above, husband has introduced evidence indicating that the appreciation of the Free Lance-Star stock was a result not only of his efforts, but also of passive market forces, i.e., economic conditions and the efforts of his brother. Husband was very well compensated for his efforts, earning a total of $14,000,000 in salary and stock dividends between 1970 and 1991. The adequacy of this compensation is not in dispute, as evidenced by wife's expert, who testified that both husband and his brother were in fact overcompensated; each receiving a salary roughly twice the industry standard for positions of equal standing. Wife's expert estimated that husband and his brother were each paid roughly $100,000 more per year in salary than was appropriate according to the industry standard.

In light of this evidence, in classifying the increase in stock value, in addition to considering the impact of passive economic factors and the efforts of husband's brother, the trial court should consider the extent to which the marital estate has already been adequately compensated for the husband's efforts.

## 501 Hanover Street Home

Husband argues that the trial court erred in treating all but $41,000 of the Hanover Street property as marital property. Husband asserts the $82,000 generated by the sale of his Ingleside home, which husband subsequently invested in the Hanover Street home, should be treated as separate property because wife did not prove it was gifted to her. Further, husband asserts that a sum of the appreciated value of the home proportionate to husband's $82,000 contribution should also be treated as separate property.

Under Code § 20-107.3(A)(3)(d), "when marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification."

Here, it is undisputed that in anticipation of the parties' relocation to the Hanover Street home, husband sold his separate residence on Ingleside Drive for $82,000. Wife argues the commissioner's finding of one-half of the $82,000 as marital property is justified because she contributed her pre-marital cash resources, as well as time and energy, in refurbishing the Ingleside Drive home prior to its sale. However, the record

contains no evidence of the value of wife's contributions. Accordingly, as prescribed by Code § 20-107.3, her contributions were transmuted into husband's separate property when they were commingled with husband's separate property.

The $82,000 was subsequently invested in the Hanover Street home, which was conveyed to the parties by joint title. Although husband and wife disagree as to the exact use of the $82,000 in the Hanover Street property, it is evident from the record that the entire $82,000 was invested in some manner in the property, as the commissioner concluded, "to reduce the mortgage and/or renovation costs of the property." This evidence is sufficient for purposes of Code § 20-107.3(A)(3)(d) to retrace the property claimed as separate by husband.

Having found the $82,000 was husband's separate property, the commissioner further concluded that husband "made a gift of those separate sale proceeds to [wife] . . . ." While the Hanover Street home was conveyed by joint title to the parties, no presumption of gift arises from the mere fact that the property was jointly titled. Code § 20-107.3(A)(3)(g). The fact that property is jointly titled must be considered by the trial court in determining if a gift was made, but alone, it is insufficient proof of a gift. To have found that a gift occurred, the trial court must have found that wife met her burden of proving the three elements of a gift: (1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee. Theismann

- 11 -

v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813 (1996). Here, the only element disputed by the parties is the element of husband's intent.

Husband argues that he did not intend to make a gift of the $82,000 invested in the acquisition of the parties' marital home and that there is no evidence of such intent in the record.[1] The record shows that the parties purchased the home to serve as their home and that the new home was purchased in order to accommodate the parties' growing family. Husband placed no reservations on the transfers of title permitting him to reclaim the property upon divorce or any other circumstance. Further, wife testified that husband had said to her that his property was also her property. These circumstances, in combination with the fact that the house was conveyed by joint title, are evidence that a gift was intended and therefore that the entire sum of $82,000 was marital property. See id. Accordingly, we find the trial court erred in determining that only $41,000 of the property was gifted marital property.

_____

[1] Husband argues that our holding in Lightburn v. Lightburn, 22 Va. App. 612, 472 S.E.2d 281 (1996), where we reversed the trial court's order awarding wife a one-half interest in a tract of jointly titled marital property, supports husband's assertion that the trial court erred by finding a gift on the facts of this case. Husband misconstrues our ruling in Lightburn. In Lightburn, we reversed on the basis that the trial judge failed to determine or address the statutorily prescribed "equities and the rights and interests of each party in the marital property," in determining the wife's share of the retitled property. 22 Va. App. at 619, 472 S.E.2d at 284. There was no issue, as there is here, as to whether a gift had occurred, as we "accept[ed] the trial court's finding and the appellant's concession that an interest in the marital property was a gift to the wife." Id. at 617, 472 S.E.2d at 283.

However, while we find that the entire $82,000 is properly classified as marital, the trial court was not bound to make an equal distribution of the property. Id. at 568, 471 S.E.2d at 814. The trial court must give careful consideration to the gifted status of marital property, but the equitable award of marital property is ultimately to be determined by the trial court's consideration of the evidence and application of the Code § 20-107.3(E) factors. Id. The gifted status of the property is relevant to several of the factors in subsection (E), in particular Code § 20-107.3(E)(6) and (10), which require consideration of "[h]ow and when specific items of such marital property were acquired" and "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award."

Id. As the trial court erred in determining that only $41,000 of the gifted property was marital, we remand for reconsideration of the equitable distribution of the entire $82,000 consistent with our holding herein.

<u>Spousal Support</u>

- 13 -

Husband was ordered to pay wife $10,000 a month in spousal support. Husband argues this sum was reached in error by both the trial court and the commissioner because each failed to consider provisions made with regard to marital property, as required by Code § 20-107.1(8).

Code § 20-107.1(8) provides that "[i]f the court determines that an award should be made, it shall, in determining the amount, consider . . . the provisions made with regard to the marital property under § 20-107.3 . . . ." Here, the commissioner found $10,000 the appropriate support amount prior to quantifying the equitable distribution award. In addition, the "Value Chart" prepared by the commissioner did not include nine assets of the parties, having a total value of $641,838. The trial court affirmed the support award at the October 30, 1995 hearing, four and one-half months before Schedule A,[2] quantifying the equitable distribution award, was adopted by the court in its final decree on March 15, 1996. The trial court heard evidence addressing the factors in Code § 20-107.1; however, it is unclear from the record whether the court considered the impact of the final $4,204,530 equitable distribution award on the spousal support needs of wife.

Wife argued that a significant portion of the $4,204,530 was

---

[2] The trial court, recognizing that the Value Chart prepared by the commissioner did not include all of the parties' assets, directed counsel to prepare "Schedule A," a classification and valuation of all assets and proposed division thereof for the court.

to be conveyed in the form of non-income producing assets, including the parties' residence and wife's automobile and jewelry. However, $1,872,834 of the award is a monetary award. Wife dismissed this sum as being owed to wife and not available to her because of this appeal. In determining spousal support, the commissioner and trial court must consider all factors contained in Code § 20-107.1; failure to do so constitutes reversible error. Woolley v. Woolley, 3 Va. App. 337, 344, 349 S.E.2d 422, 426 (1986). Accordingly, when determining spousal support, the trial court must consider the income generating potential of the marital award as well as other income and expenses generated by the asset assignment constituting the equitable distribution award.

As we have found the trial court erred in classifying the full appreciation of husband's Free Lance-Star stock as marital property, a new equitable distribution award must be made, requiring reconsideration of the spousal support award. Accordingly, we remand for reconsideration of the spousal support award consistent with this opinion.

### WIFE'S ASSIGNMENTS OF ERROR

### Valuation of the Free Lance-Star Stock

Extensive evidence was presented by both parties with regard to the value of husband's Free Lance-Star stock and each party presented significantly different valuations. Wife contends that the commissioner "devoted only one sentence in his Report to the actual valuation issue. . . . He simply commented that

- 15 -

`[husband's] experts are more competent as to the valuation process due to their experience and consistent testimony.'" Wife further notes that in setting out the values of the marital assets in the Value Chart, the commissioner calculated a value for husband's stock of $5,517,125, achieved by averaging the values presented by husband's and wife's experts. When the inconsistency in the Chart and the commissioner's report were brought to his attention, he issued a clarification letter, stating that "the value of the stock should be value as stated by [husband's] expert and should not be the value that I have listed." On the basis of these observations, wife argues the commissioner erred in accepting husband's valuations.

Wife also argues that the court erred in accepting the valuations because the trial court should not delegate to the commissioner its judicial functions or its duty to make factual determinations.

Where experts offer conflicting testimony, it is within the discretion of the trial court to select either opinion. <u>Reid v. Reid</u>, 7 Va. App. 553, 563, 375 S.E.2d 533, 539 (1989). Here, the commissioner heard considerable evidence from both parties' experts regarding the proper value of husband's stock. In his report, the commissioner concluded that based on the evidence presented, "[husband's] experts are more competent as to the valuation process due to their experience and consistent testimony." The trial court accepted the commissioner's findings and having done so, the findings are presumed to be correct when

reviewed on appeal and are to be given "great weight" by this Court. Pavlock v. Gallop, 207 Va. 989, 994, 154 S.E.2d 153, 157 (1967). The findings will not be reversed on appeal unless plainly wrong. Chaney v. Haynes, 250 Va. 155, 158, 458 S.E.2d 451, 453 (1995).

Wife did not object to qualification of husband's witnesses as expert. Rather, wife asserts that her witnesses were more qualified than husband's to determine the value of husband's stock. The relative qualification of expert witnesses goes to the weight of the evidence presented by the expert, but is not determinative of the matter.

The trial court also properly exercised its discretion in accepting the commissioner's findings. The commissioner's findings are supported by credible evidence and consequently, the findings, as approved by the trial court, must be affirmed. Id. at 158, 458 S.E.2d at 453.

### Division of Marital Share of Retirement Benefits

Wife argues that the trial court erred in failing to order that she receive a portion of husband's survivor benefits under his Free Lance-Star Retirement Plan. Husband asserts that because the commissioner found wife was entitled to 25.6% of husband's survivor benefits,[3] and the husband's retirement plan only allows for survivor benefits in 50%, 75% and 100%

---

[3] The commissioner recommended Wife receive one-half of the marital portion of Husband's Free Lance-Star Retirement Plan pension, which constitutes 25.6% of husband's pension.

designations, the trial court properly found it could not order relief not permitted under the plan.

Federal law prohibits the trial court from "requir[ing] a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan."  26 U.S.C. § 414(p)(3).  Code § 20-107.3(G)(1) provides that:

> [t]he court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time.  The court may order direct payment of such percentage of the marital share by direct assignment to a party from the employer trustee, plan administrator or other holder of the benefits.  However, the court shall only direct that payment be made as such benefits are payable.

(Emphasis added).  Accordingly, while the trial court has no authority to order direct payments from a retirement plan in contravention of that plan's provisions, Code § 20-107.3(G)(1) does not mandate that payments come directly from the retirement plan.  The court is free to order that husband, not the plan, pay wife her share of husband's retirement benefits.  Consequently, if the court desires to award benefits to wife in a manner not encompassed by the plan, the court may require husband to make a lump sum payment out of his share of the martial estate[4] or to

---

[4]  Such a lump sum payment is permitted under Code § 20-107.3(G) which permits a trial judge to determine the present value of the marital portion of the pension and in dividing that portion, to include the awarded amount in a monetary award under Code § 20-107.3(D).  Gamble v. Gamble, 14 Va. App. 558, 421 S.E.2d 635 (1992).

- 18 -

pay wife a percentage of the retirement benefits as he receives those benefits.  See Gamble v. Gamble, 14 Va. App. 558, 421 S.E.2d 635 (1992).

Wife also contends that the trial court erred in not requiring that she be allowed to name an alternate beneficiary for her portion of the marital share of husband's retirement benefits.  Husband argues that wife's request to be allowed to name an alternate beneficiary was properly denied by the trial

court under both state and federal law because his retirement plan does not allow for the naming of an alternate beneficiary.

"Under federal law, qualified domestic relation orders [(QDROs)] are an exception to ERISA's proscription against alienation and assignment of pension benefits." Wilson v. Wilson, 18 Va. App. 193, 200, 442 S.E.2d 694, 698 (1994). In order to qualify as a QDRO, a domestic relations order must "not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan," and must "not require the plan to provide increased benefits." 26 U.S.C. § 414(p)(3). Here, because husband's retirement plan does not make provisions for payment by the plan to an alternate beneficiary, the court cannot order such payment from the plan. However, as noted above, this does not preclude the court from exercising its discretion to have the payments made from husband, either in lump sum or as the benefits are paid to him, instead of directly from the plan. Accordingly, not only may the court require that husband pay wife 25.6% of his retirement benefits, in the event that wife predeceases husband, the court may also instruct husband, not the plan, to pay wife's designee.

On remand the trial court, in reconsidering the marital award, should consider whether to order that a lump sum or payments equal to the wife's share of the retirement benefits due her under the equitable distribution award be made to wife or her beneficiary.

                Post-Separation Deposits and Withdrawals

     Wife argues that the commissioner and trial court erred in

awarding husband credit for post-separation contributions to

various marital accounts.  The post-separation deposits were made

with distributions from the husband's Free Lance-Star stock, the

appreciation of which was classified as part marital and part

separate.  Accordingly, a portion of the post-separation

distributions which husband deposited were earnings on the

marital stock and therefore should have been classified as

marital property.

     Code § 20-107.3(A)(2) addresses the classification of

property acquired post-separation:
               Marital Property is . . . all property . . .
               acquired by either spouse during the
               marriage, and before the last separation of
               the parties, if at such time or thereafter at
               least one of the parties intends that the
               separation be permanent, is presumed to be
               marital property in the absence of
               satisfactory evidence that it is separate
               property.


     Dividends received post-separation from husband's separate

property are properly classified as non-marital.  However, if the

property or some portion thereof which generated the dividends

was marital, the dividends attributable to the marital property

would be properly classified as marital.  Here, we have remanded

for reconsideration the classification of the increase in the

value of husband's stock.  Once the trial court determines what

portion of the appreciation is marital and what portion is

husband's separate property, the trial court must also classify

                              - 21 -

earnings attributable to the marital portion as marital.

Wife also argues that husband made post-separation withdrawals from the accounts and that the trial court erred by failing to require husband to account for these withdrawals. Wife argues that because of the complex tracing involved in order to verify husband's figures regarding the various account balances, she did not discover the numerous discrepancies in the multiple accounts in time to present evidence at the June 29, 1994 hearing. A subsequent motion for leave to present supplemental evidence was denied. Wife proffered that husband made numerous post-separation withdrawals and transfers and that in total while making $285,000 in post-separation contributions, he withdrew $372,562. Wife argues that the commissioner and trial court erred in failing to accept her proffer and in failing to require husband to account for the $87,562 net discrepancy.

The granting or denying of a motion to hear additional evidence is within the sound discretion of the trial court. See Morris v. Morris, 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986). In Morris the trial court refused to reopen the proceedings at the wife's request to hear additional evidence concerning an asset the wife asserted should not have been classified as marital property. Id. We concluded that since the request to hear additional evidence "came six weeks after the evidentiary hearing consisting of two full days of testimony during which each party had ample opportunity to present evidence, it was within the court's discretion to refuse to take

- 22 -

further evidence . . . ." Id. (citations omitted).

Here, the wife's motion for leave to present supplemental evidence was made nine weeks after the hearing. Wife asserts that she was unable to present evidence at the hearing regarding discrepancies in the accounts because husband failed to fully disclose information about some of the Fidelity accounts until a few days prior to the hearing. Assuming, arguendo, that wife's assertions accurately represent the facts, such untimeliness in providing wife with the account information may have excused wife's failure to present evidence on this matter at the hearing; however, it does not explain wife's nine week delay in moving for leave to present additional evidence. Consequently, we find that neither the trial court nor the commissioner erred in rejecting wife's proffer, as the decision was within the sound discretion of the court.

### Deduction of Litigation Expenses

Wife argues that the trial court erred in failing to deduct her litigation expenses from the valuation of wife's accounts. Alternatively, wife argues that if she is not given credit for her litigation expenses, husband should be ordered to pay all of her litigation fees and costs, not merely the $50,000 awarded by the trial court.

The trial court and commissioner could have properly considered evidence in the record of the depleted value of wife's marital accounts attributable to her litigation expenses. This is especially true because some four years and four months passed

between the time of separation and entry of a final decree. However, at the extensive hearing wife did not address the stipulated values and subsequent depletion due to significant legal fees. Rather, wife sought to have this evidence admitted nine weeks after the hearing. Both parties had ample opportunity during the hearing to present evidence regarding the value of accounts and the costs of litigation.

The trial court's and commissioner's decision to receive additional evidence after the close of the record is within the discretion of the court. Morris, 3 Va. App. at 307, 349 S.E.2d at 663. The commissioner exercised his discretion not to do so and given wife's opportunities to address this matter on the record, we find no abuse of discretion.

Wife's alternate argument is also unpersuasive. The commissioner indicated that in considering the sizable legal fees claimed by wife and in light of the equitable distribution and spousal support awards, $50,000 was an appropriate payment to wife for her legal expenses. Wife presents no argument that suggests the commissioner or trial court abused their discretion in ordering payment of $50,000 and no evidence in the record suggests that as a matter of law, a larger sum should have been awarded. However, in view of our remand of the equitable

distribution award and the spousal support award, the trial court should reconsider the attorney's fee award.

<u>Affirmed in part,
reversed in part,
and remanded.</u>