COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Bumgardner
Argued at Alexandria, Virginia


JOE GAINES FOREMAN

MEMORANDUM OPINION[*] BY
v.    Record No. 2092-98-4       JUDGE RUDOLPH BUMGARDNER, III
                                          JULY 27, 1999
KRISTIE K. KETCHUM


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
J. Howe Brown, Judge

Beth A. Bittel (Law Offices of Beth A.
Bittel, on briefs), for appellant.

Kristie K. Ketchum, pro se.


Joe Gaines Foreman and Kristie K. Ketchum were divorced by a final decree entered August 14, 1998.  The husband appeals the trial court's (1) equitable distribution of the marital residence; (2) classification of the Fidelity Investments IRA account as marital property; (3) finding that he was at fault; (4) finding that denial of spousal support would constitute a manifest injustice; (5) failure to impute income to the wife; and (6) denial of husband's motion to reopen.  We affirm the trial court on all issues except its classification of the IRA account, which we reverse and remand for reconsideration in light of this decision.

_____

     * Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

We view the evidence in the light most favorable to the wife, the prevailing party below.  See Cook v. Cook, 18 Va. App. 726, 731, 446 S.E.2d 894, 896 (1994).  The parties married in 1986 when the wife was 28 and the husband was 46; they separated in March 1997.  This was the husband's third marriage, the wife's first.  The trial court awarded the wife sole physical and legal custody of the two children.  The parties did not appeal the custody issues.

The husband was anxious to start a family, but the wife wanted to continue pursuing her career goals, which included getting a Ph.D. and maintaining her financial independence.  The wife, who had a master's degree in Education of the Deaf, worked full-time at Children's Hospital and part-time at Gallaudet University.  She stayed home for six months after their children's birth, and subsequently earned $26,000 annually working part-time at Children's Hospital.  By 1996, she had completed her Ph.D. course work.  In October 1997, the wife commenced employment with the Fairfax County schools.  The husband, who had a Ph.D. in electrical engineering from Johns Hopkins University, earned $86,000 per year at the Naval Research Laboratory.

The parties first entered marital counseling in 1988.  Dr. Harvey Oaklander saw them as a couple for three years; he also saw the husband individually through 1991 and the wife until

-

1994.  The parties saw two other marital counselors after 1991 and a financial advisor in 1996.

The husband commenced psychoanalysis in 1992 with Dr. Houston MacIntosh at an annual cost of approximately $18,000 between 1993 and 1996.  The wife testified that his therapy was a source of great discord in the marriage.  She testified the expense had a negative impact on the parties' lifestyle affecting the food and clothes she purchased and the vacations they took.  It also affected the marriage:  the husband's relationship with his therapist was the most important one in his life, what they addressed was none of the wife's business, and for four years he attended sessions 3-4 times per week.

In March 1997, the wife left the marital residence, took the children, and filed for divorce on the grounds of constructive desertion and mental cruelty.  The husband denied all allegations of fault and cross-complained alleging adultery.  The wife then amended her complaint to charge adultery.

The trial court referred the issues of fault to a commissioner in chancery.  Both parties excepted to the commissioner's May 19, 1998 report.  The trial judge conducted the equitable distribution hearing in June, ruled on the objections to the commissioner's report, and entered the final decree on August 14, 1998.  The court denied the husband's motion to re-open certain testimony from the equitable distribution trial.

-

The court granted the husband a divorce based on the wife's adultery.  However, it noted that the wife's adultery was unrelated to the breakdown of the marriage.  The trial court found that the husband's focus of time and energy on his psychoanalysis was a significant factor in the breakdown of the marriage.

In challenging the equitable distribution award, the husband argues the trial court erred in finding a gift of half the total equity in the marital residence and in dividing the residence equally.  Equitable distribution awards will be upheld "unless it appears from the record that the trial judge has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in equities . . . ."  Blank v. Blank, 10 Va. App. 1, 9, 389 S.E.2d 723, 727 (1990).

The wife must prove the husband's donative intent as well as the nature and extent of his intent.  See Lightburn v. Lightburn, 22 Va. App. 612, 617, 472 S.E.2d 281, 283 (1996) (citations omitted).  "We look to what the words express, not what the grantor may have intended."  Davis v. Henning, 250 Va. 271, 275, 462 S.E.2d 106, 108 (1995) (citation omitted).  See Capozzella v. Capozzella, 213 Va. 820, 824, 196 S.E.2d 67, 70 (1973) (a deed intended for one purpose is intended "for all purposes apparent on its face"); Rowe v. Rowe, 24 Va. App. 123,

-

137-38, 480 S.E.2d 760, 766-67 (1997). The court may consider the circumstances in existence at the time a deed is executed, see Hills v. Brooks, 253 Va. 168, 177, 482 S.E.2d 816, 822 (1997); Davis, 250 Va. at 275, 462 S.E.2d at 108, and any ambiguity is construed against the grantor. See Phipps v. Leftwich, 216 Va. 706, 710, 222 S.E.2d 536, 539 (1976).

The husband purchased the marital residence before the marriage for $184,000. He invested between $70,000 and $75,000 in separate funds in the house before and during the marriage. The wife contributed to the upkeep and maintenance of the house. On May 13, 1992, the husband recorded a deed of gift transferring the house jointly as tenants by the entirety with right of survivorship.

The wife claims that the parties agreed to title the house jointly and own it equally if she deferred her career in order to raise children. Dr. Oaklander characterized the agreement as a "quid pro quo"; she would defer her "career indefinitely because she wanted to stay at home . . . in return for the total equality financially." Ultimately they executed the deed before the wife's second pregnancy.

The husband does not dispute that he agreed to put the wife's name on the house in case he died; he also wanted her to earn equity in it. He argues, however, that he intended her to get one-half of all future equity earned during the marriage, not one-half of its full equity.

-

Code § 20-107.3(A)(2)(i) provides that marital property is "all property titled in the names of both parties whether as joint tenants, tenants by the entirety or otherwise, except as provided by subdivision A3." Subdivision (A)(3)(f) provides "[w]hen separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification." (Emphasis added). The court found the husband's testimony that he did not understand the deed of gift and only wanted the wife to get part of the house "disingenuous." See Langman v. Alumni Association of the University of Virginia, 247 Va. 491, 442 S.E.2d 669 (1994); Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc) (fact finder is judge of witness' credibility). Notwithstanding his separate contributions, the trial court found that the husband intended to make an unconditional gift of one-half of the full equity in the house to the wife because of the deed. The evidence supports this finding.

In making an equitable distribution award of marital property, the court must apply the Code § 20-107.3(E) factors. See Rowe, 24 Va. App. at 138, 480 S.E.2d at 767. It is not, however, "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors."

-

<u>Woolley v. Woolley</u>, 3 Va. App. 337, 345, 349 S.E.2d 422, 426
(1986).

Highlighting some relevant factors, the trial court found
that the wife deferred her career to raise children, delayed
retirement, and helped to maintain the home.  It also found that
the husband made a significant non-monetary negative
contribution to the marriage by devoting his time and energy to
his therapy and that he intended to give the wife half the
house.

Clearly, the trial court considered the parties'
contributions to the marriage and the marital residence, the
cause of the breakdown of the marriage, and other appropriate
factors.  Because its decision is based on the evidence, we find
no error in its failure to cite to each factor.  In light of all
the evidence, we uphold the trial court's equal division of the
marital residence.  <u>See</u> <u>Blank</u>, 10 Va. App. at 9, 389 S.E.2d at
727.

We next consider the classification of the Fidelity
Investments IRA.  The trial court ruled that the evidence was
insufficient to prove that the IRA was husband's separate
property and classified it as marital property.[1]  The husband

_____

[1] The trial court ruled that "the evidence was that
[husband] said, he was the only person that contributed to it,
but the evidence was insufficient to show that it was separate
property.  I think it was marital property."

-

argues the IRA was presumed separate property pursuant to Code § 20-107.3(A)(1). We agree.

"[T]he character of property at the date of acquisition governs its classification pursuant to Code § 20-107.3." Stratton v. Stratton, 16 Va. App. 878, 881, 433 S.E.2d 920, 922 (1993). "Code § 20-107.3 provides that property . . . acquired before marriage is presumed to be separate." Barnes v. Barnes, 16 Va. App. 98, 104, 428 S.E.2d 294, 299 (1993).

The husband argues that he acquired the IRA before the marriage and it earned only passive income during the marriage. His disclosure form lists the purchase date as 1982; the parties married in 1986. The wife presented no evidence to show that the IRA was marital or that it was acquired during the marriage.

There was uncontradicted evidence that the husband acquired the IRA before the marriage and invested no money in it during the marriage. By statute, the IRA is presumed separate property. The trial court erred in classifying it as marital property and including it in the marital estate. We reverse this decision and remand the case for reconsideration of the equitable distribution award in light of this ruling.

Next we consider whether the trial court erred in awarding the wife spousal support despite her adulterous conduct. Spousal support may be awarded to a party who has committed adultery "when the trial court finds by clear and convincing evidence that denial of support would constitute a 'manifest

-

injustice, based upon the relative degrees of fault during the marriage and the relative economic circumstances of the parties.'"  Rahbaran v. Rahbaran, 26 Va. App. 195, 211-12, 494 S.E.2d 135, 141 (1997) (citing Code § 20-107.1; Barnes v. Barnes, 16 Va. App. 98, 102, 428 S.E.2d 294, 298 (1993)).

The husband, denying all allegations of fault for the breakdown in the marriage, challenges the propriety of the award.  Fault "encompasses all behavior that affected the marital relationship, including any acts or conditions which contributed to the marriage's failure, success, or well-being." Barnes, 16 Va. App. at 102, 428 S.E.2d at 298.  See also O'Loughlin v. O'Loughlin, 20 Va. App. 522, 528, 458 S.E.2d 323, 326 (1995).

The court, considering both parties' conduct, found that the wife's adultery did not cause the dissolution of the marriage because their relationship had deteriorated to the point of just living together prior to 1996.  The evidence supports this finding.  The parties were in counseling throughout most of the marriage; the husband thought the marriage was failing as early as 1992 when he entered therapy; after 1992, the parties ceased behaving as a couple, doing things as a family, and having sexual relations; they slept in separate bedrooms beginning in 1995; and took no family vacations in 1993, 1994, and 1996.

-

The trial court further found that the husband's obsession with his psychoanalysis was a significant factor in the breakdown of the marriage. Aside from his own testimony, the husband presented no evidence that he needed the psychoanalysis. In fact, Dr. Oaklander testified that in his medical opinion the husband did not need psychoanalysis. This opinion is supported by evidence that the husband abruptly terminated his sessions in 1997.

The trial court must also weigh and consider the parties' comparative economic positions. It expressly noted that the husband had greater earning capacity and income than the wife. See Barnes, 16 Va. App. at 103, 428 S.E.2d at 298. Even if she worked full-time, her salary would only be one-half of his, and she would have to pay for day care. We find that the court considered the parties' respective degrees of fault and their relative economic situations in finding that to deny the wife support because of her adultery would be manifestly unjust in this case. The evidence supports the support award.

We next consider whether the trial court erred in failing to impute income to the wife. The husband contends the wife is voluntarily underemployed and that the court erred in failing to determine her earning capacity. We disagree.

In setting or modifying spousal support, a court may impute income to a party voluntarily underemployed. See Stubblebine v. Stubblebine, 22 Va. App. 703, 710, 473 S.E.2d 72, 75 (1996) (en

-

banc); Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994).  The court's decision will not be disturbed on appeal unless plainly wrong or unsupported by the evidence.  See Saleem v. Saleem, 26 Va. App. 384, 393, 494 S.E.2d 883, 887 (1998).  Whether a person is voluntarily underemployed is a factual determination.  In evaluating a request to impute income, the trial court must "consider [the parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the [parties]."  Niemiec v. Dept. of Soc. Servs., Div. of Child Support Enforcement, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998).  Furthermore, the husband has the burden of proving that the wife was voluntarily foregoing more gainful employment.  See id.

The evidence supports the trial court's finding that the wife was not voluntarily underemployed and that the parties agreed that she would not work full-time while the children were young.  The wife provided both monetary and non-monetary contributions to the family.  She was an equal marital partner; she worked outside the home before and after the children were born, maintained the household, and cared for the children.  When she perceived her job was in jeopardy, she secured employment as a "cued speech" educator earning $21,155 annually on a ten-month contract.

-

The husband also failed to establish that the wife voluntarily rejected full-time employment. His expert testified that there were three full-time positions available in Fairfax County where the wife could earn approximately $30,000. The wife challenged his expert on whether the vacancies were in "cued speech," her specialized field, how many applications each position had, and what the competition was for each. Under these circumstances, the court properly held that the wife had not unreasonably refused employment for which she was qualified. See Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990). We affirm the finding that the wife is not voluntarily underemployed and its decision not to impute income to her.

Finally, we affirm the denial of the husband's motion to reopen. He claims that the wife's justification for leaving the Children's Hospital job was inconsistent with prior statements, caught him by surprise, and prevented him from presenting rebuttal evidence. In support of his motion, the husband proffered testimony from the wife's supervisor that (1) she was not fired, (2) she voluntarily resigned, and (3) he did not tell her that her position would be eliminated.

It is within the trial court's discretion to grant or deny a rehearing. See Hughes v. Gentry, 18 Va. App. 318, 326, 443 S.E.2d 448, 453 (1994) (citation omitted). "[A] petitioner must show either an 'error on the face of the record, or . . . some

-

legal excuse for his failure to present his full defense at or before the time of entry of the decree.'" Holmes v. Holmes, 7 Va. App. 472, 480, 375 S.E.2d 387, 392 (1988) (quoting Downing v. Huston, Darbee Co., 149 Va. 1, 9, 141 S.E. 134, 136-37 (1927)).

The wife testified that she left her job because her supervisor had been fired, she felt her job was in jeopardy, that it was becoming increasingly difficult to bill insurance companies for educator services, and that she was advised that it was "probably time to look around."

Despite the husband's claim that this testimony surprised him, he did not cross-examine the wife about her alleged prior inconsistent statements. See Code § 8.01-404. Nor did he establish that the wife's trial testimony was in fact inconsistent with her prior statements. Therefore, there is no justification for the husband's "surprise" or lack of preparation. The husband also failed to show that his "new" evidence was "not known or accessible" prior to trial, Hughes, 18 Va. App. at 326, 443 S.E.2d at 453, or that it is likely to produce a different result. We affirm the denial of this motion.

For the foregoing reasons, we affirm all issues raised herein except the classification of the Fidelity Investments

-

IRA.  We reverse and remand that issue for reconsideration in accordance with this opinion.

<u>Affirmed in part,</u>
<u>reversed and remanded.</u>
