COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bumgardner and Kelsey
Argued at Alexandria, Virginia


GIRARD C. MILLER

MEMORANDUM OPINION* BY

v.    Record No. 2261-02-4        JUDGE LARRY G. ELDER
                                    JULY 15, 2003
LYNN E. MILLER


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
            Alfred D. Swersky, Judge

Michael A. Ward (Michael A. Ward, P.C., on
briefs), for appellant.

David D. Masterman (Condo Masterman Kelly &
Roop, P.C., on brief), for appellee.


Girard C. Miller (husband) appeals from the equitable

distribution and spousal support awards accompanying his divorce

from Lynn E. Miller (Cox) (wife).  On appeal, he argues the

court's equal division of a particular marital investment

account was error and challenges the fact, amount and duration

of the award to wife of part of his deferred compensation,

including his supplemental executive retirement plan (SERP).  He

also challenges the fact, amount and duration of the spousal

support award and contends the trial court erroneously failed to

include in wife's income monies to be earned on assets she

received in the equitable distribution or, in the alternative,

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

erroneously found five percent was a reasonable rate of return for those assets. Wife argues husband's appeal is barred because he enforced a portion of the award, and she assigns cross-error to the trial court's refusal to award her attorney's fees. Both parties seek an award of attorney's fees on appeal.

We hold husband's selective enforcement of the equitable distribution award does not bar this appeal. On the merits, we hold the court erroneously failed to divide $65,000 in deferred compensation benefits and that the marital share of these benefits is one hundred percent. We also hold that the marital share of husband's contract completion bonus, if one is received, is five percent. Next, we hold the formula the trial court set out for calculating the marital share of husband's SERP was incorrect. We affirm as to all other challenged aspects of the equitable distribution award. We direct the trial court to reconsider the spousal support award in light of our reversal of a portion of the equitable distribution award. Finally, we affirm the trial court's denial of wife's request for attorney's fees and direct the parties to bear their own fees on appeal, as well. Thus, we affirm in part, reverse in part, and remand for further proceedings in keeping with this opinion.

## I. WAIVER OF RIGHT TO APPEAL

Wife contends husband waived his right to challenge the spousal support and equitable distribution awards when the trial

-

court, at his request, entered qualified domestic relations orders (QDROs) distributing two marital assets divided by the equitable distribution award. We acknowledge the general principle that "[a] party availing himself of a decree as far as favorable to him cannot appeal from the decree wherein it is not favorable to him, if his acceptance of the benefit on the one hand is totally inconsistent with appeal on the other." 1B Michie's Jurisprudence, Appeal and Error § 54, at 196 (1995). However, we hold that this is not what occurred here.

First, wife has failed to establish that husband benefited from the portions of the decree he sought to enforce. The two retirement accounts husband asked the court to divide were in his name alone. Absent the QDROs, husband retained the entire interest in the accounts. Upon entry of the QDROs, wife, not husband, obtained a substantial benefit in the form of a right to payment of half the sums disbursed from the accounts.

Further, even if the QDROs benefited husband, his appeal of other portions of the equitable distribution award is not barred. Husband assigned no error to the trial court's division of the two retirement accounts, and their division is at issue only indirectly as they are two of many components of the equitable distribution of a sizeable marital estate. A party who appeals some aspects of an equitable distribution award while enforcing others is not absolutely barred from having the challenged issues considered on appeal. Rather, that party

-

merely runs the risk that, if he wins on appeal, the trial court, on remand, will be unable to provide him with the full benefits of his victory because insufficient assets remain in the marital estate.  Here, because the estate is sizable, the trial court's ability to adjust the remaining portion of the award, if necessary in the event of a reversal, is manifest.

## II.  EQUITABLE DISTRIBUTION

On appeal, we review the evidence in the light most favorable to the party prevailing below.  Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).

> Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the . . . equitable distribution award will not be reversed on appeal.

Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

### A.  FIDELITY INVESTMENT ACCOUNT

Husband contends the court should have awarded him sixty percent rather than fifty percent of the Fidelity investment account.  He avers that "the overwhelming weight of the evidence . . . as to the contributions of the parties, both monetary and non-monetary, [to the acquisition of marital property] favored" him, but he focuses predominantly on his contention that "he contributed more than 93% of the income during the marriage and made the majority of investment decisions which resulted in the

-

couples' accumulation of wealth."  Based on the factors in Code
§ 20-107.3 and the evidence in the record, viewed in the light
most favorable to wife, we hold the court did not abuse its
discretion by evenly dividing the Fidelity account.

Although "there is no presumption in Virginia favoring
equal division of marital property," a court is not "constrained
from making an equal division if it finds it appropriate to do
so upon consideration of the factors set forth in Code
§ 20-107.3(E)."  Robinette v. Robinette, 10 Va. App. 480, 486,
393 S.E.2d 629, 633 (1990).  "[W]here one party contributes
substantially more to a marriage financially, the court may in
its discretion . . . make a greater award to the party
contributing the most financially," but it is not required to do
so.  Srinivasan v. Srinivasan, 10 Va. App. 728, 733, 396 S.E.2d
675, 678 (1990) (emphasis added).

Here, the evidence, viewed in the light most favorable to
wife, supported the trial court's findings that, although
husband's "monetary contributions were far more significant from
a pure dollar standpoint," wife "was an integral part of the
marriage," "performing her role in a substantial way,"
"contributing both socially and economically" "in the manner
agreed to (whether expressly or implicitly) by the parties."

Prior to and during the parties' marriage, wife wrote and
edited financial materials during the course of her professional
life, and she averred she was heavily involved in discussions

-

regarding how to invest the parties' money throughout the course of their marriage.

Wife worked throughout the marriage but testified that she sacrificed her career for husband's, moving with him several times in order to advance his career. She maintained the home and served as the primary caregiver for husband's son from his first marriage when the son, who was ten years old when the parties married in 1985, visited for three to seven weeks during the summer. The parties had limited professional help for house cleaning, remodeling and landscaping. Wife was primarily responsible for maintaining the house and overseeing those who came into the house to help. Wife prepared each of the parties' homes for sale and oversaw extensive litigation concerning one home, which resulted in a $250,000 recovery.

In 1993, wife made a "tremendous career sacrifice" by "moving to Washington[, D.C.,] to facilitate . . . husband's desire . . . to be the CEO of his own organization," a company that managed retirement assets. Wife was interviewed before husband was hired for the position, and she participated extensively in husband's entertaining and travel in that position. Wife testified that the board members of husband's corporation "liked [her] because [she] could talk about retirement and that's what th[e] company is all about." Husband told both wife's sister and his own friend and business

-

colleague that wife played a "vital role in furthering the effectiveness of his career" and "he was fortunate to have her."

This evidence, viewed in the light most favorable to wife, established both (1) that wife made monetary and nonmonetary contributions to the well-being of the family and the acquisition, care and maintenance of the marital property during the fifteen-year marriage and (2) that her nonmonetary contributions were significant. Thus, despite husband's disproportionately large monetary contributions to the marriage, we hold the trial court did not abuse its discretion in dividing the Fidelity investment account equally.

B. DEFERRED COMPENSATION OTHER THAN SERP

Marital property includes, inter alia, "that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties." Code § 20-107.3(A)(2) (emphasis added). "[T]he future benefit is deemed acquired when the contribution is made and not when the benefit is actually received." Brett R. Turner, Equitable Distribution of Property § 5.09, at 156, 161 (2d ed. 1994). In addition, a bonus "received at the end of a period of successful employment [is] acquired gradually throughout the entire period and not all at once . . . . Thus if the husband receives after the marriage a bonus for work performed during the marriage, the bonus is marital property." Id. at 156.

-

Husband challenges subsection (i) of the court's deferred compensation award. He contends wife is not entitled to any portion of the benefit to be paid in September 2004 because employer's contribution for this benefit was made after the parties' separation and had no relation to husband's pre-separation service. We disagree. Husband testified that each of employer's contributions to the 457(f) account did not vest for three years and that he could access a contribution only after it vested. Although the employment agreement does not specify the period of service for which the September 2001 contribution was made, the contract covers the period from January 1, 2001, to March 31, 2006, and provides that employer will make a contribution on September 1 in each of the years from 2001 to 2005 based on husband's earnings during the prior year. Thus, the court could reasonably have concluded that employer's September 2001 contribution, payable on September 1, 2004, was for husband's service for the entire 2001 calendar year. Because the parties were married for the first three months of 2001, the marital share of that contribution was 25%. Thus, the trial court's award of 12.5% of the September 2004 distribution to wife was in keeping with its equal division of the marital share of many assets.

For similar reasons, we reject husband's claims of error in subsections (iii) and (iv) of the deferred compensation distribution. The distributions payable in September 2002 and

-

September 2003 were for husband's service in 1999 and 2000, respectively. Because the parties did not separate until April 2001, the marital share of the September 2002 and September 2003 distributions was one hundred percent, and the trial court's award of 50% of each of those distributions to wife was in keeping with its equal division of the marital share of many assets.

Husband also assigns error to the fact that the trial court erroneously estimated the September 2002 and 2003 distributions would equal "approximately $154,000," whereas in fact they totaled only $102,000. However, husband brought this alleged error to the trial court's attention in his motion to reconsider. When the trial court entered the final decree, it omitted its estimate of the amount of these distributions but adhered to its earlier decision to divide the distribution equally. Because husband has failed to establish error, see, e.g., Key v. Commonwealth, 21 Va. App. 311, 313, 464 S.E.2d 171, 172 (1995), we affirm the division of these distributions.

Husband also assigns error to the trial court's failure to divide $65,000 in 457(f) benefits receivable in March 2003. He represents that the marital share of the benefits is 33.4%, entitling wife to an award of 16.7% of those benefits. We agree that the trial court failed to include this benefit payment in the decree and, based on the court's duty to classify and divide all marital property, see Code § 20-107.3(A), that this omission

-

constituted reversible error.  However, again, we disagree with husband as to the amount of the benefit to which wife is entitled.  The undisputed evidence at trial indicated that husband was to receive a deferred compensation "payout" in March 2003 based on a contribution made in March 2000.  This conclusion was supported by husband's testimony that deferred compensation payments made by employer on his behalf did not vest until three years after each contribution was made.  The court could reasonably have concluded employer made the March 2000 contribution for service rendered during 1999 or 2000, prior to the parties' separation in April 2001.  Thus, the marital share was 100% rather than 33.4%.

Husband next challenges the subsection (ii) award to wife of "12.5% of the distribution received in March, 2002."  Husband argues he did not receive a 457(f) distribution at that time but did receive a performance bonus.  In response to argument on this issue on the motion for reconsideration, the trial court observed, "I thought that the only objection to that was the way it was characterized . . . [that] I mischaracterized it as deferred compensation" rather than as a bonus.  Subsection (ii), as originally drafted, provided that "[Wife] is to receive 12.5% of the 457(f) plan distribution payable in March, 2002, and a similar percentage of the distribution in March, 2003."  After the trial court heard argument from counsel, it struck from the decree the "457(f) plan" language and the language awarding "a

similar percentage of the distribution in March, 2003," and changed the phrase "<u>payable</u> in March, 2002," to "<u>received</u> in March, 2002." (Emphases added). In light of the trial court's statements on the record, we hold the removal of these phrases from the decree demonstrates the court's confirmation that it was dividing bonuses actually paid in March 2002.

Husband contends the trial court erroneously failed to award to wife an equal portion of the marital shares of the long-term "Summit" bonus incentives to be received in 2003 and 2004. However, subsections (v) and (vi) of the final decree expressly provide for the division of the 2003 and 2004 Summit incentives. Further, the decree sets the amount of the 2004 incentive at 4.2%, the amount requested by husband. Thus, we conclude the trial court committed no error on these issues. As to the 2003 Summit incentive, husband's employment contract provided that incentive covered the service period of 2000 through 2002, making the marital share 41.6%. Although the trial court divided evenly the marital share of many of the assets, it was not required to do so. Thus, we hold it did not abuse its discretion in awarding less than half the marital share of the 2003 incentive to wife.

Lastly, husband asks for clarification of the court's subsection (vii) award to wife of half the marital share of the contract completion bonus if and when husband receives that bonus. Husband seeks the addition of language indicating that

-

"one-half of the marital share of the contract completion bonus is one-half of 1/21st (there being 21 calendar quarters in the contract), or 1/42nd or 2.38 per cent [sic]."  Husband's employment contract expressly covers the term of January 1, 2001, through March 31, 2006, unless husband dies or is terminated.  The provision of the contract detailing the terms of the completion bonus states as follows:

> In the event that overall performance targets established under each of his annual incentive compensation programs shall have been met in each of the five years ending in December 2005, Executive shall be paid in January 2006 a contract completion performance bonus of $[X].  In the event that, at the time, the performance targets in his annual incentive compensation programs shall have been met or exceeded in four of the five years ending in December 2005, he shall be paid a contract completion performance bonus of $[0.5X].

The completion bonus relates expressly to husband's performance under the contract during the years 2001 through 2005, is payable in January 2006, and does not include his performance during the twenty-first and final quarter of the contract. Thus, the marital share of the completion bonus is 5%.

## C.  THE SERP PLAN

### 1.  Calculation of the Marital Share

The 2000 SERP agreement provides an absolute limit of 12 years of SERP benefits based on actual years of service, whereas the amendment contained in the 2001 employment contract allows husband to earn additional years of benefits based on

-

performance goals rather than years of service. Wife offered expert testimony that the SERP plan was limited to 12 years of actual service, but wife's expert reviewed only the 2000 SERP plan. The expert's testimony did not take into consideration the amendment contained in husband's 2001 employment contract.

Based on the SERP amendment contained in husband's 2001 employment contract, we hold that the final decree did not set out the correct formula for calculating the marital share of the SERP benefits. The decree should have defined the denominator for the marital share as husband's actual years of service up to 12 years plus any performance-based "years-of-service" credits earned by husband under the 2001 SERP amendment. If husband earns an additional year of service for performance in 2001, wife is entitled to have the numerator for calculating the marital share increased by 0.25 to represent the portion of 2001 prior to the parties' separation.

## 2. Tax Consequences of SERP Division

Husband's expert testified that the SERP is "a nonqualified retirement plan which means that contributions that go into it are not tax free or tax deferred." He also testified that it is not covered by "the ERISA rules that have to do with divisibility upon divorce," meaning it is not subject to division by QDRO. Husband explained that he will have "a complete tax liability immediately upon [the SERP's] vesting," which he testified would occur in January 2006 if he continues

-

to work for his present employer through that date, even if he is not eligible to begin receiving SERP benefits at that time. Husband argues that wife should be required to pay her share of any taxes due in advance of the distribution of benefits. We hold that the decree, as written, is broad enough to require wife to make her share of such tax payments as they become due, even if this occurs in advance of any distributions.

### III.  SPOUSAL SUPPORT

Husband challenges the fact, amount and duration of the trial court's spousal support award.  He contends that, in calculating wife's income, the trial court erroneously failed to include monies to be earned by wife on assets received in the equitable distribution or, in the alternative, erroneously found five percent was a reasonable rate of return on the investment of such assets.

Because we reverse portions of the equitable distribution award, we must direct that the trial court reconsider its spousal support award in light of changes in the distribution of the parties' property.  See Code § 20-107.3(E)(8).  Thus, we do not consider any aspect of the spousal support award on the merits.  However, based on husband's claim that the court failed properly to consider wife's investment income in determining her need for support and the fact that wife's income will again be a factor in the trial court's consideration of the spousal support award on remand, cf., e.g., Virginia Elec. & Power Co. v.

-

<u>Westmoreland-LG&E Partners</u>, 259 Va. 319, 324-25, 526 S.E.2d 750, 754 (2000) (addressing on merits issue not necessary for decision on appeal but "likely to arise [again] on remand"), we make the following observations:

A court determining whether to award spousal support pursuant to Code § 20-107.1 and if so, how much, must consider any investment income each spouse is able to earn on assets received in the equitable distribution. Code § 20-107.1(E)(1), (8); <u>see</u> <u>Rowe v. Rowe</u>, 24 Va. App. 123, 129, 480 S.E.2d 760, 767 (1997). Although a spouse seeking support may not be required to invade the <u>corpus</u> of funds or other assets received pursuant to the equitable distribution, a court must consider any income those assets are able to produce. <u>Rowe</u>, 24 Va. App. at 129, 480 S.E.2d at 767. If the evidence supports a finding that the assets are "underinvested," the court may, in its discretion, impute a higher rate of return to such assets than they are actually earning, <u>see</u> <u>L.C.S. v. S.A.S.</u>, 19 Va. App. 709, 715-16, 453 S.E.2d 580, 583-84 (1995), but it is not required to do so.

## IV. ATTORNEY'S FEES

Whether to award attorney's fees and costs rests within the sound discretion of the trial court. <u>See, e.g.</u>, <u>Lightburn v. Lightburn</u>, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). The key to a proper award of counsel fees is reasonableness under all the circumstances. <u>See</u> <u>McGinnis v. McGinnis</u>, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

-

Wife appears to contend she was entitled to an award of fees because the divorce resulted from husband's desire to commit adultery and because husband inaccurately responded to discovery, which caused wife to incur additional attorney's fees. However, the trial court did not grant the divorce based on a finding of adultery and expressly stated that wife had "failed to prove adultery occurring before the separation." Further, even if the court had granted a divorce based on a finding of adultery, it would not be compelled to hold husband responsible for some or all of wife's attorney's fees. Similarly, assuming a discovery violation occurred, whether to award attorney's fees as a discovery sanction also is discretionary. See Code § 8.01-271.1. We hold the court did not abuse its discretion in refusing the request for attorney's fees.

Each party also requests an award of attorney's fees on appeal. Because we hold that the trial court erred in some of the respects complained of by husband on appeal and because both parties received substantial assets in the equitable distribution, we decline to make an award of fees and direct that the parties bear their own fees incurred on appeal.

V.

We hold husband's selective enforcement of the equitable distribution award does not bar this appeal. On the merits, we hold the court erroneously failed to divide $65,000 in deferred

-

compensation benefits and that the marital share of these benefits is one hundred percent. We also hold that the marital share of husband's contract completion bonus, if one is received, is five percent. Next, we hold the formula the trial court set out for calculating the marital share of husband's SERP was incorrect. We affirm as to all other challenged aspects of the equitable distribution award. We direct the trial court to reconsider the spousal support award in light of our reversal of a portion of the equitable distribution award. Finally, we affirm the trial court's denial of wife's request for attorney's fees and direct the parties to bear their own fees on appeal, as well. Thus, we affirm in part, reverse in part, and remand for further proceedings in keeping with this opinion.

Affirmed in part,
reversed in part,
and remanded.