COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


JEFFREY DAVID WIESE

                                                        OPINION BY
v.        Record No. 2251-04-4            JUDGE JAMES W. HALEY, JR.
                                                       AUGUST 23, 2005
MARGARET ANNE WIESE


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              J. Howe Brown, Judge Designate

            Kimberley A. Murphy (Dana J. Carlson; Hale, Hassan, Carlson &
            Penn, P.L.C., on briefs), for appellant.

            David M. Levy (Surovell, Markle, Isaacs & Levy, PLC, on brief), for
            appellee.


        Jeffrey D. Wiese, husband, appeals a decision of the trial court concerning the equitable

distribution of the marital residence.  Appellant asserts that the trial court erred in the following:

1) in finding that husband failed to prove the amount of separate property that he contributed toward

the purchase of the residence; 2) in finding that a refinance of the residence transmuted the house

into a wholly marital asset; 3) in refusing to apply the Brandenburg (or similar) analysis to divide

the equity in the residence; and 4) in ruling that Margaret A. Wiese, wife, had a right of first refusal

to purchase husband's share of the residence.  We reverse in part, affirm in part, and remand to the

trial court for further proceedings consistent with this opinion.

                                            I.

        Prior to the parties' marriage in 1989, husband purchased a town home, the Ivy Oak town

home, in his sole name.  The town home remained titled in his sole name after the marriage.

Husband and wife resided at the town home until July 1990.  The town home was subsequently

sold, and the parties purchased the Thunder Chase house in their joint names (the residence at issue in this matter). The parties resided at the Thunder Chase residence for thirteen years, after which the parties separated and filed for divorce based on one-year separation.

At the equitable distribution hearing, wife testified that she contributed marital funds to the town home's mortgage payment for the year she lived in the Ivy Oak town home. Wife did not present the specific dollar amount she contributed. Both husband and wife testified that wife made non-monetary contributions (e.g., wallpapering, painting, etc.) to the Ivy Oak town home. Wife did not present evidence to establish the amount by which the value of the Ivy Oak town home increased as a result of her personal efforts.

Husband realized $45,483.57 from the 1990 sale of the Ivy Oak town home. The sale of the Ivy Oak town home and the purchase of the Thunder Chase residence were simultaneous transactions. The down payment of $41,624.30 was wired from the Ivy Oak settlement to the Thunder Chase settlement. Husband testified that at least $35,097 of the down payment was his separate property resulting from the sale of the town home. Wife did not dispute the source of the down payment. Husband testified that the remainder of the net gain realized from the town home went to closing costs and a checking account. Wife's attorney stated at trial, "We know that was a hybrid property and there was some separate money in that."

The parties refinanced the Thunder Chase residence three times over the thirteen-year occupancy period. After the third refinance, the parties removed $32,696.93 in equity from the home and, as wife testified, we "mutually agreed" to divide these proceeds evenly, apparently treating these proceeds as marital property. At the hearing, the evidence showed that the parties contributed equally to the mortgage payments and expenses for renovations and repairs. Wife testified that she made non-monetary contributions such as painting and wallpapering to the Thunder Chase house. The parties agreed that the value of the home was $465,000.

The trial court held that husband, even if able to prove an amount of contributed separate property, had "so commingled [these funds] that it lo[st] its character." The trial court continued, "Those refinances, if nothing else, change[d] the character of the contribution and end[ed] the possibility of tracing." The trial court classified the Thunder Chase home as "wholly marital" property but noted husband's "large contribution" toward the purchase of the home. The court awarded fifty-five percent of the equity in the home to husband and forty-five percent to wife. The trial court granted wife a right of first refusal to purchase husband's share of the home, citing the fact that wife currently lived in the home with the parties' children and the children had lived in the home their entire lives.

II.

Code § 20-107.3(A)(1) reads, in pertinent part, "Separate property is (i) all property, real and personal, acquired by either party before the marriage . . . ." In Barnes v. Barnes, 16 Va. App. 98, 104, 428 S.E.2d 294, 299 (1993), this Court held that: "Code § 20-107.3 provides that property acquired during the marriage is presumed to be marital and property acquired before marriage is presumed to be separate." As noted above, wife failed to present any evidence as to the increase in value of the Ivy Oak town home as a result of her personal efforts or monetary contributions. Accordingly, she failed to meet her burden of proving a transmutation, in whole or in part, of the Ivy Oak town home from separate to marital, as required by Code § 20-107.3(A)(3)(a-d). See Moran v. Moran, 29 Va. App. 408, 412, 572 S.E.2d 834, 835-36 (1999); Rowe v. Rowe, 24 Va. App. 123, 136, 480 S.E.2d 760, 766 (1997). Thus, it was established that the Ivy Oak town home was husband's separate property.

As noted, the Thunder Chase property was titled in both parties' names. However, Code § 20-107.3(A)(1)(e) reads,

> When marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the

- 3 -

contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

In von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997), this Court summarized the concept of tracing as follows:

Whether a transmuted asset can be traced back to a separate property interest is determined by the circumstances of each case, including the value and identity of the separate interest at the time of the transmutation. . . . [T]he party claiming a separate interest in transmuted property bears the burden of proving retraceability. If the party claiming the separate interest in transmuted property proves retraceability, the burden shifts to the other party to prove that the transmutation of the separate property resulted from a "gift."

(Citations omitted).

Husband testified that the funds realized from the sale of the town home were wired at settlement for down payment on the Thunder Chase home. Wife did not dispute the source of the funds used for the down payment. The evidence sufficiently demonstrated that husband advanced his separate property by wire transfer as the down payment on the Thunder Chase residence. Wife's attorney conceded in argument that, as a result of husband's contribution, the Thunder Chase property was in part separate and thus hybrid at the time of its acquisition. Thus, husband met his burden of tracing the proceeds of the sale of his separate property, the Ivy Oak town home, into the acquisition of the Thunder Chase residence. See Fowlkes v. Fowlkes, 42 Va. App. 1, 590 S.E.2d 53 (2003). "'Code § 20-107.3(A)(3) addresses hybrid property, that is, property which is by definition part marital and part separate. The concept of hybrid property presupposes that separate property has not been segregated but, rather, combined with marital property.'" Id. at 7, 590 S.E.2d at 56 (quoting Rahbaran v. Rahbaran, 26 Va. App. 195, 207, 494 S.E.2d 135, 141 (1997)). See also Bchara v. Bchara, 38 Va. App. 302, 313, 563 S.E.2d 398, 403

(2002). "When the tracing process succeeds, the property has both marital and separate interests." B. Turner, Equitable Distribution of Property 276 (2d ed. 1994).

Husband having retraced his contribution, the burden shifts to wife to demonstrate that the $35,097 was a gift. "The three elements of a gift are: (1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on rehearing en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). See also Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 509 (2003).

Here, wife introduced no evidence to prove that these funds were a gift to her. The funds were advanced directly, by wire transfer, from husband's account to an account at settlement of the Thunder Chase home. Husband clearly did not intend to make these funds a gift to wife, nor did he deliver the amount directly to her, nor did she accept them. Accordingly, wife failed to prove the $35,097 was a gift.

Because wife did not carry her burden of proving that husband gifted her with the proceeds derived from the sale of the town home, those proceeds remained husband's separate property. And, because husband carried his burden of retracing his contribution of separate property to the purchase of the marital residence, the residence was, at least prior to the multiple refinancings, part-marital and part-separate property. See Code § 20-107.3(A)(3)(e).

III.

Though apparently a matter of first impression in Virginia, courts in other jurisdictions have concluded that refinancing does not necessarily preclude the possibility of tracing separate property, or constitute an independent transmutation, even if proceeds of refinancing may become marital property.

In <u>Hubby v. Hubby</u>, 556 S.E.2d 127 (Ga. 2001), husband had made the down payment on the marital residence with his separate funds, the home was refinanced, and a portion of the proceeds taken out by the parties. The Supreme Court of Georgia stated:

> Also, a refinancing of the mortgage during the marriage does not prevent an equitable division. Even though a refinancing may increase the debt and reduce the equity, the net effect is to convert the then-existing equity in the marital home into cash. Of the $68,500 Husband and Wife received by refinancing, $63,017 was used to pay off the original mortgage, leaving them with a balance of $5,483. If they retained that cash in an account or used it to purchase other marital assets, then that account or property may be subject to equitable division in this divorce action. Insofar as the marital home is concerned, however, the important elements are the increase in net equity during the marriage and the respective contributions from personal and marital funds, rather than any conversion of the equity into other forms of property over the course of the marriage.

<u>Id.</u> at 129.

Likewise, in <u>Griffin v. Griffin</u>, 642 P.2d 949 (Idaho Ct. App. 1982),

> The wife claims that even if the . . . home originally was William Griffin's separate property there was a transmutation of its status from separate to community when it was refinanced in September, 1979 . . . [and] both parties signed a loan application form, as well as a note and deed of trust . . . [and] the loan application form [recited the property would be held by joint title].

<u>Id.</u> at 952. The Court of Appeals of Idaho held that transmutation had not occurred.[1]

The refinancing of a home has become a common practice. Refinancing does not *per se* constitute a transmutational alteration of the parties' respective interests in real property, or preclude a tracing of those interests. We hold that husband traced the sum of $35,097 as separate property used for the down payment on the Thunder Chase property, and neither the refinancings, nor the equal division of a portion of the proceeds from the third refinancing, standing alone or in

---

[1] We recognize that Idaho is a community property state. Nonetheless, Idaho courts follow principles of tracing and transmutation in equitable distribution.

conjunction, transmuted the equity in its entirety into marital property. We find the trial court erred when it concluded: "Those refinancings, if nothing else, change[d] the character of the contribution and end[ed] the possibility of tracing." Accordingly, we reverse the decision of the trial court on this issue and remand for equitable distribution under either Brandenburg or similar analysis.

IV.

Husband asserts that, contrary to the intent of Code § 20-107.3(F), the trial court considered the child support award as a factor in granting wife the right of first refusal to purchase the husband's share of the marital residence. That section reads: "The court shall determine the amount of any such monetary award without regard to . . . support for the minor children of both parties." Code § 20-107.3(F). In William v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987), this Court held:

> The clear legislative intent embodied in this Code section is to maintain an appropriate separation between considerations of child or spousal support and considerations of an equitable division of marital wealth. This is appropriate because support and equitable distribution awards are based on entirely different considerations and serve entirely different purposes. . . . In short, different and distinct types of interests are involved between adjusting the wealth of the marriage and providing spousal and child support and the statutory scheme of Code § 20-107.3 recognizes this.

The record fails to show that the trial court improperly considered child support in granting wife the right of first refusal. The trial court stated that it granted the right of first refusal because wife lived at the home, had primary custody of the children, and the children would benefit by staying in the only house they had ever known. We find no error in the trial court's decision.

V.

For the foregoing reasons, we affirm in part, reverse in part, and remand to the trial court the issue of the equitable distribution of equity in the martial home.

<u>Affirmed, in part,
reversed, in part,
and remanded.</u>